**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**COURTNEY VICK**                                                                                        **PLAINTIFF**

**V.**                              **NO. 4:16CV00046-JM-JTR**

**CAROLYN W. COLVIN,**                                                                        **DEFENDANT**
**Acting Commissioner,**
**Social Security Administration**

**RECOMMENDED DISPOSITION**

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody Jr.  You may file written objections to all or part of this Recommendation.  If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation.  By not objecting, you may waive the right to appeal questions of fact.

**I.  Introduction:**

Plaintiff, Courtney Vick, applied for disability benefits on October 12, 2012, alleging a disability onset date of Ferbruary 16, 2012.  (Tr. at 16).  After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application.  (Tr. at 27).  The Appeals Council denied Vick's request for review.  (Tr. at 1).  The ALJ's decision now stands as the final decision of the Commissioner, and Vick has requested judicial review.

The ALJ found that Vick had not engaged in substantial gainful activity since the amended alleged onset date of October 10, 2012.  (Tr. at 18).  The ALJ found at Step Two

that Vick had the following severe impairments: degenerative disc disease and irritable bowel syndrome. *Id*. At Step Three, the ALJ determined that Vick's impairments did not meet or equal a listed impairment. (Tr. at 21). Before proceeding to Step Four, the ALJ determined that Vick had the residual functional capacity ("RFC") to perform light work except for the following limitations: 1) lifting and carrying 20 pounds occasionally and 10 pounds frequently; 2) standing and walking up to 4 hours in an 8-hour workday; 3) sitting up to 4 hours in an 8-hour workday; 4) occasionally climbing stairs, balancing, stooping, kneeling, crouching, and crawling, but never climbing ladders; 5) frequently reaching, handling, fingering, and feeling, bilaterally; and 6) using corrective lenses when necessary. *Id*. Next, the ALJ found that Vick is capable of performing past relevant work as a medical records clerk, pre-school teacher, and phlebotomist. (Tr. at 25). The ALJ made an alternative finding at Step Five. Evaluating testimony from the Vocational Expert, she held that based on Vick's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that she could perform. (Tr. at 26). Consequently, the ALJ found that Vick was not disabled. (Tr. at 27).

**II. Discussion:**

    A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to

support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing.

B. Vick's Argument on Appeal

Vick argues that substantial evidence does not support the ALJ's assessment of her severe impairments. She contends that her bipolar disorder should have been ruled a severe impairment. Reviewing the entire record, the Court finds that the ALJ's determination of severe impairments was supported by substantial evidence.

The claimant has the burden of proving that an impairment is severe, *i.e.*, it significantly limits one or more basic work activities. *Gonzales v. Barnhart*, 456 F.3d 890, 894 (8th Cir. 2006); *see Bowen v. Yuckert*, 482, U.S. 137 (1987); 20 C.F.R. § 404.1521(a). If the impairment would have no more than a minimal effect on the claimant's ability to do

3

work, then it does not satisfy the requirement of Step Two. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007).

The clinicians at the Rice Clinic, a psychiatric care facility, saw Vick from 2003 to 2014. (Tr. at 589). Much of Dr. Rice's treatment occurred before the relevant time period and may not be considered by the ALJ. In a narrative letter dated March 25, 2014, Dr. Robert Rice, M.D., indicated Vick had been diagnosed with a mood disorder and learning disability, which rendered her unable to work. *Id.* However, she held two long term jobs prior to applying for disability (as a medical records clerk from 2002 to 2007 and as a phlebotomist from 2008 to 2012). (Tr. at 19). Moreover, in a clinic note dated February 3, 2012, Dr. Rice recommended she consult Arkansas Rehabilitation Services to secure work. Dr. Rice's opinion on her ability to work involves an issue reserved for the Commissioner, and therefore is not entitled to controlling weight. *Stormo v. Barnhart*, 377 F.3d 801, 805 (8th Cir. 2004). An ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence. *Rogers v. Chater*, 118 F.3d 600, 602 (8th Cir. 1997). As explained below, Dr. Rice's opinion that Vick cannot work is not supported by the record as a whole.

On September 28, 2012, Dr. Kenneth Counts, a state psychological examiner, reported that Vick presented as friendly, attentive, and fully communicative. (Tr. at 385). Her chief complaint was chronic and severe back pain, not mental impairments. *Id*. She claimed her psychiatric symptoms were mild and controlled by medications. *Id*. Vick had normal cognitive functioning and denied obsessive, intrusive, and persistent thoughts. *Id*. She

4

denied manic symptoms and reported no hallucinations delusions, or other symptoms of psychotic process. *Id.* Her mood was normal with no signs of depression or mood elevation. *Id.* Dr. Counts concluded that no psychiatric disorder would prevent her from seeking pain management. (Tr. at 386).

On January 23, 2013, Dr. Christopher Mocek, M.D., concluded that Vick had no psychological problems that might interfere with her ability to do basic work activities on a sustained basis. (Tr. at 501). He added that she did not have impairments that interfered with her ability to manage stress, concentrate, remember or follow instructions, or work at a consistent pace. *Id.* While Dr. Mocek is Vick's treating spine doctor and not a psychiatric provider, his opinion on her mental status deserves at least some weight as it comports with Dr. Counts's opinions. The findings of Dr. Counts and Dr. Mocek are consistent with Vick's ability to maintain two long-term jobs, as well as with her activities of daily living.

During the administrative hearing, Vick reported that she lives alone, and that she drives, sweeps the house, and cleans. (Tr. at 39). She is also able to perform personal care, prepare her own meals, and shop in stores. (Tr. at 19). Her hobbies include watching TV and reading. *Id.* She is able to go out alone and spend time with others. *Id.* Vick claimed her medications, including narcotics for her back pain, had no side effects. (Tr. at 43). She testified that she could lift up to 20 pounds. (Tr. at 44). Her parents help her out at her house, but they live over an hour away and only visit twice a week. (Tr. at 45).

Vick's attorney asked very limited questions of Vick about her mental impairments,

and told the ALJ that her parents would offer more conclusive testimony on that. (Tr. at 47).[1] According to Vick's father, she has difficulty getting along with others and trouble with finances. While those problems may create some difficulties for Vick, they do not present more than a minimal restriction on Vick's ability to work and engage in activities of daily living. Because Vick's work history, medical records, and activities of daily living do not support a finding that her mental impairments are severe, the ALJ did not err with respect to his holding at Step Two.

## III.  Conclusion:

There is substantial evidence to support the Commissioner's decision that Vick only had two severe impairments.  He did not err in concluding bipolar disorder was not a severe impairment.  The finding that Vick was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is affirmed.  The case is dismissed, with prejudice.

IT IS SO ORDERED this 23rd day of September, 2016.

_____
UNITED STATES MAGISTRATE JUDGE

---

[1] A claimant carries the burden of proving an impairment is severe, so testimony from the claimant is important to an ALJ's decision; the attorney's decision to forego direct questioning on mental impairments is telling.